☑ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>Information about the location of the cellular telephone assigned call numbers 414-406-6385 (the "Target Cell Phone"), with service provider T-Mobile, as further described in Attachment A | ) | Case No. 25-835M(NJ)<br>Matter#: 25-R-10 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ________ District of ________
*(identify the person or describe the property to be searched and give its location)*:

see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 3/11/2025 *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Honorable Nancy Joseph.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for ___ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of ________.

Date and time issued: 2/25/2025 @ 1:15 p.m.

Nancy Joseph
*Judge's signature*

City and state: Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Court
*Printed name and title*

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ____________________

____________________
*Executing officer's signature*

____________________
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**
**2025R10**

1. This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number **414-406-6385**, **IMEI 351050542635590**, (referred to herein and in Attachment B as "**Target Cell Phone**"), whose wireless provider is T-MOBILE ("Service Provider"), a wireless telephone service provider 11760 US Highway 1, Ste. 600 North Palm Beach, FL 33408.

2. Target Cell Phone.

## ATTACHMENT B
**Particular Things to be Seized**
**2025R10**

### I. Information to be Disclosed by the Service Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from November 1, 2024 to present:

   i. Names (including subscriber names, usernames, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long-distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with

such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**II. Information to be Seized by the Government**

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of possession of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, and use of a communications facility to facilitate a drug-trafficking offense, violations of Title 21 United States Code Sections violations of **18 U.S.C. § 371 (conspiracy)**, **18 U.S.C. § 922(o) (possession of machinegun) and 18 U.S.C. 545** have been committed by Ivan Anothony CAMACHO-VELAZQUEZ (XX/XX/2005) and other known and unknown individuals during the period of July 1, 2024 to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)**

I, ________________________________, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by ___________________ ("Provider") and my title is ____________________________. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Provider. The attached records consist of ______________________________________ (*generally describe records in terms of pages, CDs or megabytes of data*). I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Provider, and they were made by Provider as a regular practice; and

b. such records were generated by Provider's electronic process or system that produces an accurate result, to wit:

1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Provider in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by Provider, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

____________________________ ____________________________________________

Date Signature

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Information about the location of the cellular telephone assigned call numbers 414-406-6385 (the "Target Cell Phone"), with service provider T-Mobile, as further described in Attachment A

Case No. 25-835 M(NJ)

Matter#: 25-R-10

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A,

located in the ________________ District of ________________________, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 USC 371 | Conspiracy |
| 18 USC 922(o) | Possession of a Machinegun |
| 18 USC 545 | Smuggling |

The application is based on these facts:

see attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* __________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Mitch Ward, Wisconsin DOJ DCI

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 2/25/2025

*Judge's signature*

City and state: Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

Print Save As... Attach Reset

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**
**Matter Number 2025R10**

I, Mitchell G Ward, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the location of the cellular device assigned call number **414-406-6385,** (the "**Target Cell Phone**"), whose service provider is T-MOBILE ("Service Provider"), a wireless telephone service provider headquartered at 4 Sylvan, Parsippany, NJ 07054. The **Target Cell Phone** is described herein and in Attachment A.

2. I am a state certified law enforcement officer employed as a Special Agent with the Wisconsin Department of Justice, Division of Criminal Investigation, (DCI) and have been a sworn officer in the State of Wisconsin for over 32 years. I am currently assigned to DCI's Milwaukee Field Office, Narcotics Bureau. I am also a federally deputized task force officer for the United States Postal Inspection Service ("USPIS"). As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3. I have participated in complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. More specifically, my training and experience includes the following:

a. I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b. I have experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

c. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

d. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations. I am familiar with the language utilized over the telephone or other communication applications to discuss drug trafficking, and know that the language is often limited, guarded, and coded. Additionally, I know that drug traffickers often change their phone numbers and cellular devices on frequent basis in an attempt to thwart law enforcement from tracking their phones and to conceal their identity.

e. I know that drug traffickers commonly have in their possession, and at their residences and other locations ("stash houses") where they exercise dominion and control, controlled substances, firearms, ammunition, drug proceeds, and records or receipts pertaining their drug trafficking;

f. I know that drug traffickers used what is refer to as a "stash house" to stow illegal items such as illegal controlled substance, packaging paraphernalia, illegal firearms, ledgers, and US currency. Often times members of drug trafficking organizations have to make stops at the stash locations to pick up illegal controlled substance to deliver. Additionally, drug traffickers will have customers meet drug traffickers near the stash location. Multiple stops can be made in a day at these locations. This is done so the trafficker does not have to carry additional illegal controlled substances in their vehicle or person or maintain them at their residence. This protects the trafficker from law enforcement investigations as they do not have illegal controlled substances on them after the delivery is made or inside their personal residence. Often time the US currency will be transported after the delivery to the stash house to protect against law enforcement investigation and rival drug trafficker's robbery crews.

g. I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

h. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

4. I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

5. The facts in this affidavit come my personal participation in this investigation, and my review of: (a) consensually recorded telephone conversations and face-to-face meetings; (b) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers, all of whom I believe to be truthful and reliable; (c) court-authorized electronic communications; and (d) information obtained from cooperating citizen witnesses, confidential sources, and defendants, whose reliability is established herein. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that the violations of **18 U.S.C. § 371 (conspiracy)** and **18 U.S.C. § 922(o) (possession of machinegun)** have been committed by Ivan Anothony CAMACHO-VELAZQUEZ (XX/XX/2005) herein CAMACHO. There is also probable cause to believe that the location information described in Attachment A will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## JURISDICTION

8. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

### Probable Cause and Investigation

9. Affiant incorporates by reference not only Affiant's own investigation and observations, but also statements and observations of other law enforcement agencies which were provided by law enforcement officers and contain factual information obtained from victims, witnesses and other sources; that these afore-mentioned statements and observations are the type of information and intelligence similarly generated by both law enforcement officers and special agents involved in similar investigations; that your Affiant has not only provided similar information throughout the course of Affiant's career, but also has relied on said observations and statements for other investigations and found them to be truthful and reliable;

## A. Background

10. In October of 2024, City of Milwaukee Police Detective Paul Martinez, who is a deputized temporary federal officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) discovered an Instagram (IG) account viewable to the public associated to the vanity name of "**eldeladobletono**" with the profile name of "Anthony Velazquez." This IG profile displays a link to a secondary IG profile of "Ivan Anthony Camacho," with the vanity name of "guatauba_9x3." TFO Martinez observed images of the same subject on both accounts and compared them with a booking photo of Ivan Anthony CAMACHO-VELAZQUEZ. TFO Martinez identified the main subject depicted in both IG accounts as CAMACHO-VELAZQUEZ.

11. On 10-21-2024, at approximately 9:00 AM, Detective Paul Martinez observed a publicly viewable Instagram, herein IG "story" broadcasted by the IG profile "Anthony Velazquez" which utilized a vanity name of "**_eldeladobletono**". An IG "story" is a temporary post of media (photos / videos), uploaded by the user, for their followers to view. IG stories typically stay visible for up to 24 hours.

12. The story was stamped "19h" which indicates the image was uploaded 19 hours prior to viewing which indicates the media would have been uploaded on 10-20-2024. The story was composed of two (2) slides, the first being a photo of a dark colored BMW 3 series, four door sedan parked in an alley in front of a white, two-door, garage with a short chain link fence and a wood panel fence to the right of the garage. A front plate of WI AYV-2077 can be observed in the image. (A check with DOT showed that plate list to Ivan Anthony CAMACHO-VELAZQUEZ (XX-XX-XX05) of 1524 S Layton BLV, Milwaukee, WI to a blue, 2007 BMW 328I, four door sedan (VIN #WBAVA33557PV63636). *See Figure 1.*) The second slide depicted a photo of what TFO Martinez recognized to be multiple, black, machinegun conversion device parts, that when

assembled would make an "**invisi-switch**" style **machinegun conversion device**, hereinafter **MCD**. In this image, more than a dozen back plates and legs (aka sears) can be observed along with a blue emoji mailbox over the center of the back plates which would suggest to message or "inbox" CAMACHO-VELAZQUEZ to purchase one or more MCD(s). An album cover titled "Ponce City" is centered over most of the sears. Ponce is considered a major southern city of Puerto Rico. *See Figure 2.*




Figure 1




Figure 2

13. That based on Affiants training and experience, Affiant knows an MCD is a device that

converts a semi-automatic firearm into a fully automatic firearm (machine gun). This conversion enables the user to fire multiple bullets, at a rapid rate of fire, with the single pull of the trigger. That MCD(s) related to handguns are commonly referred to as: Switch (Full auto switch / Glock switch) Auto-Sear, Invisi-Switch, Buttons, (*Butones*) and Chips (*Chipotes*). That AR15 / AK47 style MCD(s) are often referred to as: Swift Links, Lightning Links and *Rifles Rapidos*;

14. That MCD(s) are commonly manufactured with various materials oftentimes via a CNC machine or 3D printer which utilizes a digital file (3D model). Below are examples of various styles of MCD(s) that are frequently being recovered by law enforcement affixed to firearms.



*Figure 3.*

*Figure 3. (Traditional **Glock style switch**)*

15. Your affiant knows through his training and experience that the popularity of MCD(s) has greatly increased within the City of Milwaukee and throughout the nation that has led to an increase of number of shots being fired at crime scenes. Your affiant is also aware that the criminal element

will often flaunt their firearms with MCD(s) and show off their arsenal of weapons in a manner to intimidate their enemies and boast to their social media followers.

16. On 10-22-2024, at approximately 1:45PM, TFO Martinez observed a publicly viewable Instagram (IG) "story" broadcasted by the IG profile "Anthony Velazquez" which utilized a vanity name of "**eldeladobletono**". The story was stamped "17h" which indicates the image was uploaded 17 hours prior to viewing which would have been on 10-21-2024. The story was composed of four slides, the first being a photo of who TFO Martinez recognized as CAMACHO-VELAZQUEZ standing in an alley in front of a red sedan holding a black Glock pistol with a flashlight attachment and what appears to be a red machinegun conversion device (MCD) affixed to the rear of the slide and a black AR15 style pistol with a tan grip while standing in front of red sedan. Brass cartridges can be observed through the AR15's magazine window. A tan, Glock style extended magazine can be observed sticking out of CAMACHO-VELAZQUEZ'S left front pants pocket. CAMACHO-VELAZQUEZ is attempting to hold the firearms in a manner to conceal his face and is wearing a black graphic t-shirt with four "Jason Vorrhees" hockey masks on it and black athletic pants with a white Nike symbol near the same pocket. *See Figure 4.*

17. The second and third slides are a video depicting multiple, traditional style (selector switch) MCD(s) in multiple colors along with multiple, loaded, black pistol magazines and a translucent extended pistol magazine containing brass cartridges. These items are laying on a red cloth with an unknown subject's hand displaying a tan Glock style pistol with a purple MCD affixed to the rear. *See Figures 5. and 6.*










Figure 4 Figure 5 Figure 6

18. TFO Martinez obtained and served a search warrant for CAMACHO-VELAZQUEZ'S IG account User ID# 65946922834. The warrant was signed by Milwaukee County Circuit Court Judge Lena Taylor in the First Judicial District of Wisconsin on November 4, 2024. TFO Martinez reviewed the information provided pursuant to the warrant. TFO Martinez noted the phone number of 414-339-2278 associated to the account in that warrant return, lists as belonging to CAMACHO-VELAZQUEZ in law enforcement databases. Also in the IG warrant return, TFO Martinez located over 12 photos of firearms (many of which have visible MCDs affixed), including videos of machine guns being fired and over 20 photos of what TFO Matinez recognizes as machine gun conversion devices.

19. On December 6. 2024, TFO Martinez observed a publicly viewable post on CAMACHO-VELAZQUEZ'S IG account. The post was a screen shot depicted a series of United States Postal Service tracking numbers. However, only the beginning numbers where visible, the end of the

tracking numbers had been obscured. TFO Martinez had observed other photos posted CAMACHO-VELAZQUEZ'S IG account that would suggest CAMACHO-VELAZQUEZ is using the USPS to traffic machine gun conversion devices. TFO Martinez provided this information to SA Mitchell WARD. SA WARD is aware that machine gun conversion devices are readily available by use of the "dark web" or other applications that allow users to order these devices from overseas, typically from the People's Republic of China. Once the order is placed, the MCDs are shipped from a secondary shipper somewhere in the United States, typically California or New York. It's common for the shippers and receivers of these packages to track these parcels as they move through the postal stream.




Figure 7

20. On December 11, 2024, SA Ward searched USPS data bases and discovered parcel # 9400 1118 9956 1431 4079 15. The first ten digits of this parcel are identical to one of the tracking numbers posted by CAMACHO-VELAZQUEZ in figure 7. This parcel was addressed to Ivan CAMACHO at 1495 S Layton Blvd, Milwaukee WI at 10:52am (also identical to figure 7). The parcel had a return address of 9099 8th St Rancho Cucamonga California. The parcel had an original weight of 2.0 ounces.

21. SA Ward discovered that 9099 8th St, Rancho Cucamonga CA is rented by MELKO Logistics Corporation. This address appeared in a joint USPIS and Homeland Security Investigation emanating from agents in Boston, MA. Case agents had purchased dozens of MCD from a source in China. Once the orders were placed and the money sent electronically, the MCD's would be mailed via USPS from various secondary shippers, including MELKO Logistics.

22. Through the course of this investigation, investigators have identified businesses, individuals, and financial apparatuses used to support the targeted websites. HSI NE, with the assistance of USPIS and the National Targeting Center ("NTC"), has identified various U.S.-based companies that receive and aggregate illicit components from China and resell and reship these items to domestic customers.

23. Between March 2024 and January 2025, an HSI Undercover Agent (UCA) began communicating with a known MCD vendor (hereinafter Target Vendor) about purchasing MCDs[1]. The MCD vendor regularly advertises their sale of MCDs on social media platforms such as Facebook and Instagram. The Target Vendor instructed the UCA to purchase MCDs from the

Target Vendor via multiple online marketplaces. While visiting the Target Vendor's profile on these marketplace websites (hereinafter Website 1 and Website 2), agents observed the Target Vendor advertised only legal items for sale, such as coins, screws, or tire pressure gauges. Based on my training and experience, as well as information about this investigation which has been relayed to me, I believe this is done to conceal the Target Vendor's illegal activity from law enforcement and from Website 1 and Website 2 so that their profile is not disabled.

24. The Target Vendor is known by law enforcement but to protect an ongoing investigation their believed name and the websites they used will not be named. Law enforcement obtained pen register orders from the District of Massachusetts, Magistrate Judge Judith Dein on December 15, 2023, February 15, 2024, and April 10, 2024. Through an analysis of the pen register information, investigators identified a Chinese phone number communicating with a number attached to a previously targeted website selling MCDs. Investigators then contacted this phone number.

24. Since May 2024, the UCA has conducted seven purchases from the MCD Vendor resulting in the seizure of sixty-six MCDs, specifically 65 "Glock switches", and one "auto sear". One fire control unit was also seized through an additional purchase[2]. Through these undercover purchases, investigators observed Target Vendor's social media posts directing customers to direct message the Target Vendor via various messaging applications prior to completing a purchase. The UCA has communicated with the Target Vendor via multiple messaging applications and has place seven orders for MCDs from the Target Vendor via Website 1. In the purchase order, the item(s) purchased by the UCA is/are described as a type of car part, screw, or other legal items. However,

upon receipt of the purchase order, MCDs have been found in the parcels along with the legal items. HSI NE has seized sixty-six MCDs from the parcels purchased from, and shipped by, the Target Vendor. HSI NE has also interdicted parcels being shipped by the MCD vendor to customers which have been found to contain MCDs.

25. During this investigation case agents were provided catalogs from the MCD vendor that contained pictures of MCD with corresponding part numbers. For example, the parcels have all included "JS" followed by a number (e.g. JS001, JS002) in the top right portion of the shipping label. A list of the alphanumeric identification numbers and the corresponding description of the items received in parcels from the Target Vendor is included below.

JS001 (silver MCD)

JS002 (red MCD with Glock TM)

JS003 (blue MCD with Glock TM)

JS005 (gold MCD with Glock TM)

JS007 (purple MCD with Glock TM)

JS009 (Type 1 Small S "Auto Sear")

JS017 (silver MCD without logo)

JS018 (red MCD)

JS019 (wine red MCD)

25. The JS chart is compiled from seizures tied to the Target Vendor during this investigation. Depending on what facility the package is shipped from the JS number could be different. The list provided above is what investigators have determined from the seizures to date.

26. On December 20, 2024, case agents executed federal search warrants on subject parcels being shipped from multiple secondary shippers in the US. One of the subject parcels was addressed to ***IV N CAMACHO*** at 1524 S Layton Blvd Milwaukee WI. These parcels (9200 1903 7589 5507 4158 35) The parcel contained two Glock Switches (MCD) packaged in the same manner as MCD's posted by CAMACHO-VELAZQUEZ on his Instagram account. Figure 8 shows both MCDs and original packaging. Also visible in Figure 8 are the alphanumeric identification numbers for the MCDs.




**Figure 8**

27. On December 11, 2024, case agents executed federal search warrants at multiple secondary shippers involved in this investigation, including MELKO Logistics located at 9099 8th St, Rancho Cucamonga CA and 1782 West 2nd Street in Pomona CA. In addition to seizing hundreds of MCDs from these locations, case agents also recovered shipping records showing prior MCD shipments to CAMACHO-VELAZQUEZ. The records recovered indicated that six shipments were sent to CAMACHO'S address of 1524 South Layton Blvd, Milwaukee WI. Four of which were sent from the Rancho Cucamonga warehouse, three of which were addressed to "Ivan Camacho." The fourth was addressed to "Fernando Vargas." Case agents recovered two shipping records from the Pomona Warehouse for Ivan Camacho. The records from the Pomona Warehouse also contained the JS Codes identifying the type and number of MCDs shipped to Comacho on 09/28/2024 and

12/09/2024. A total of eight MCDs were shipped to Comacho. The records also contained COMACHO's cell phone number of 414-406-6385 (**Target Number**).

28. On January 14, 2025, case agents executed a search warrant at an addition warehouse identified during this investigation. This warehouse was in Jurupa Valley California. Case agents again recovered large quantities of MCDs, and shipping records related to the sales and distribution of MCDs. A review of the records showed that there were four shipments sent from the Jurupa Valley warehouse to COMACHO. The shipments were addressed to Ivan Camacho at his address of 1524 South Layton Blvd, Milwaukee WI.

**E. Identification of Telephone 414-406-6385 (Target Cell Phone)**

1. Case agents searched the number related to Ivan CAMOCHO recovered from the Pomona MCD warehouse (**Target Cell Phone**) in multiple law enforcement data bases. Case agents discovered that on 12/28/ 2024, Ivan Anthony Camacho-Velazquez was stopped by City of Milwaukee Police Officer Alzalloum Salah for traffic violation and issued municipal citation #J991N8M7T5. At the time of the stop, CAMACHO provided his cell phone number of 414-406-6385 to Officer Salah. It should also be noted that CAMACHO provided the address of 1495 South Layton Blvd to Officer Salah and not his address of 1524 South Layton Blvd where several MCDs had been delivered to CAMACHO.

2. Case agents searched subscriber information for the target number in a law enforcement data base. The listed subscriber is Ivan Anthony CAMACHO, 1524 South Layton Blvd, Milwaukee WI. The data base shows that this number is a T-Mobile number belonging to CAMACHO since May of 2023.

3. Based upon this, case agents believe that CAMACHO is the current user of telephone number **414-406-6385 (Target Cell Phone).**

4. I believe that tracking the location of telephone number **414-406-6385 (Target Cell Phone)** will allow case agents to locate CAMACHO and to identify possible MCD stash locations based upon locations frequented by CAMACHO.

## TECHNICAL BACKGROUND

5. Based on my training and experience, I know that Service Provider can collect historical and prospective cell-site data and historical and prospective E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Service Provider's network or with such other reference points as may be reasonably available.

### A. Cell-Site Data

6. In my training and experience, I have learned that Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

7. Based on my training and experience, I know that Service Provider can collect cell-site data on a historical and prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business to use this information for various business-related purposes.

**B. E-911 Phase II / GPS Location Data**

8. I know that some providers of cellular telephone service, including Service Provider, have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

9. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

*10.* I also know that certain wireless providers, such as Service Provider, can provide precision location information, also known as estimated location records or historical handset location data, on both a historical and prospective basis. Each provider refers to its proprietary estimates of a cellular device's location differently. This information, however, is sometimes referred to as geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time or real-time tool (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information.

11. Based on my training and experience, I know that Service Provider also can collect per-call measurement data, which Service Provider also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

12. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

**C. Pen-Trap Data**

*13.* Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile

Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

**D. Subscriber Information**

*14.* Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.

**AUTHORIZATION REQUEST**

15. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

16. I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

17. I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the locations of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

18. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

**ATTACHMENT A**
**Property to Be Searched**
**2025R10**

1. This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number **414-406-6385**, **IMEI 351050542635590**, (referred to herein and in Attachment B as "**Target Cell Phone**"), whose wireless provider is T-MOBILE ("Service Provider"), a wireless telephone service provider 11760 US Highway 1, Ste. 600 North Palm Beach, FL 33408.

2. Target Cell Phone.

# ATTACHMENT B

## Particular Things to be Seized

## 2025R10

### I. Information to be Disclosed by the Service Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from November 1, 2024 to present:

   i. Names (including subscriber names, usernames, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long-distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as “real-time tool” or “RTT”).

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. “Information about the location of the Subject Phone” includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, “Location Information”) is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider’s services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider’s network or with

such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**II. Information to be Seized by the Government**

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of possession of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, and use of a communications facility to facilitate a drug-trafficking offense, violations of Title 21 United States Code Sections violations of **18 U.S.C. § 371 (conspiracy)**, **18 U.S.C. § 922(o) (possession of machinegun) and 18 U.S.C. 545** have been committed by Ivan Anothony CAMACHO-VELAZQUEZ (XX/XX/2005) and other known and unknown individuals during the period of July 1, 2024 to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.